## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SEAN JOHNSON, JR.<br>DAVID LOVEINGS<br>QUENTON MCCOY | Case No. 19-2359<br>**UNDER SEAL** |
| In the Matter of the Search of:<br><br>The residence located at 119 10th Street, Apt. 2, Turtle Creek, Pennsylvania | Case No. 19-2360<br>**UNDER SEAL** |
| In the Matter of the Search of:<br><br>The person of Sean Johnson, Jr. | Case No. 19-2361<br>**UNDER SEAL** |
| In the Matter of the Search of:<br><br>The person of David Loveings | Case No. 19-2362<br>**UNDER SEAL** |

## <u>AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINTS AND SEARCH WARRANTS</u>

I, Eric Goucher, being duly sworn, do depose and state the following:

### INTRODUCTION

1.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and, acting as such, I am a "federal law enforcement officer" within the meaning of Fed. R. Crim. P. 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the United States Attorney General to request a search warrant.

2.      I am a Federal Bureau of Investigation Special Agent, and have been so employed for over four years.  I am currently assigned to the newly formed High Intensity Drug Trafficking Area (HIDTA) task force, officially named the Allegheny County Police Drug Task Force.  I have

1

been the sole FBI agent assigned to the HIDTA since January 2019. Prior to that, I was assigned to the Greater Pittsburgh Safe Streets Task Force, from September 2015 to January 2019.

3.      During my employment and tenure as a narcotics agent, I have participated in numerous investigations into unlawful importation, possession and distribution of controlled substances, including fentanyl, heroin and cocaine, in violation of Title 21 of the United States Code. These investigations have involved the use of undercover officers, informants, cooperating sources, physical surveillance, electronic surveillance, pen registers and telephone toll analysis. Through these investigations, my training and experience, and conversations with other agents, I have become familiar with the methods used by traffickers to smuggle, store, and distribute drugs, collect and launder drug proceeds, and the sophisticated tactics that they routinely use in an attempt to thwart investigations.

4.      Further, based on my training and experience, I know that it is common practice for drug traffickers to routinely utilize telephones, calling cards, computers, counter surveillance, fictitious identities, and coded communications to communicate with their customers, suppliers, couriers, and other conspirators, for the purpose of insulating themselves from detection by law enforcement. Moreover, it is not unusual for them to initiate such phone or other services under the name of an associate or family member in an effort to thwart detection by law enforcement.

5.      I have participated in the investigation of a large-scale, multi-jurisdictional drug trafficking organization, which has led to the instant application for search and seizure warrants. The investigation has revealed that Robert HOWELL, JR. is the leader of a large-scale drug distribution organization that, over at least the last two plus years, has distributed multiple kilograms of cocaine, crack cocaine, heroin, and fentanyl, and that he has done so in violation of

2

21 U.S.C. § 846. The organization, whose activities are ongoing, will be referred to herein as "HDS" ("Hustlas Don't Sleep").

6.      On November 14, 2019, a grand jury returned an Indictment of many HDS associates, including HOWELL, JR., charging him and others with conspiring to distribute one kilogram or more of heroin, 280 grams or more of cocaine base, 100 grams or more of fentanyl analogs, and 400 grams or more of fentanyl, in violation of 21 U.S.C. § 846, and the alleged conduct occurred from in and around September 2017 and has continued until November 2019.

7.      On November 18, 2019, I executed an affidavit in support of search warrants for various locations associated with HDS. That affidavit, which is to be filed a Case Nos. 19-2346 through 19-2356 is incorporated by reference as if set forth herein in full.

8.      This case has been investigated by the Federal Bureau of Investigation (FBI), Allegheny County Police Department (ACPD), and the Monroeville Police Department (MPD). I have obtained the information contained in this affidavit from my personal participation in this investigation and from reviewing information obtained by other law enforcement officers, as well as information provided by confidential sources.

**PURPOSE AND SCOPE**

9.      This Affidavit is submitted in support of a criminal complaint, charging Sean JOHNSON, JR. and David LOVEINGS with violating Title 21, United States Code, § 846, which prohibits any person from attempting to and/or conspiring to possess with intent to distribute a mixture and substance containing cocaine, a Schedule II controlled substance, from approximately July to November 2019.

3

10.    Title 21, United States Code, § 846, makes it a violation of federal law for any person to knowingly and intentionally attempt to and/or conspire to possess with intent to distribute a mixture and substance containing cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A)(ii).

11.    This affidavit further charges Quenton MCCOY with violating Title 21, United States Code, §§ 841(a)(1) and 841(b)(1)(C), which prohibits any person from possessing with intent to distribute a mixture and substance containing heroin, a Schedule I controlled substance, and fentanyl, a Schedule II controlled substance, on November 2, 2018.

12.    Title 21, United States Code, §§ 841(a)(1) and 841(b)(1)(C), makes it a violation of federal law for any person to possess with intent to distribute a mixture and substance containing heroin, a Schedule I controlled substance, and fentanyl, a Schedule II controlled substance.

13.    This affidavit is also in support of search warrants for the residence of Sean JOHNSON, JR., which is 119 10th Street, Apt. 2, Turtle Creek, Pennsylvania and the persons of Sean JOHNSON, JR. and David LOVEINGS to search for and seize cellular telephones.

14.    And finally, the affidavit is also in support of the search warrant for the person of David LOVEINGS to search for and seize cellular telephones.

15.    Because this Affidavit is being submitted for the limited purpose of supporting probable cause for a criminal complaint and arrest warrant, I have not included each and every fact known to me concerning this investigation.

**FACTUAL BACKGROUND**

16.    On July 24, 2019, your affiant sought and obtained authorization to intercept cell phones used by Robert HOWELL, JR., the leader of HDS, and Wesley ELLIS-BARNES, the

4

second-in-command of HDS. During much of the investigation, officers working this investigation have been monitoring two different phones each for HOWELL, JR. and/or ELLIS-BARNES.

17. On July 30, 2019, officers began to intercept a male ELLIS-BARNES referred to as "Uncle Dave." The day before, ELLIS-BARNES (WEB) and HOWELL, JR. (RH) were intercepted discussing "Uncle Dave" and his role in the HDS conspiracy:

> WEB: I got Uncle Dave on deck already…
> RH:   You might wanna have him cook all that shit up and say fuck it
> WEB: The whole thing?
> RH:   Might as well, ain't no point to keep having to wait
> WEB: I just have to do math on how much to put in there…going to do it by zips
> RH:   Do a half at a time

18. Based on my experience with this investigation, in the above call, ELLIS-BARNES and HOWELL, JR. were talking about how ELLIS-BARNES' "Uncle Dave" was ready to cook their crack ("on deck") and HOWELL, JR. instructs ELLIS-BARNES to have his Uncle cook all of the cocaine. ELLIS-BARNES stated that he "just have to do the math" to ensure the right amount of cut "to put in there" and that he wanted to do it by the whole ounce ("zips"). HOWELL, JR. told ELLIS-BARNES to just cook a half ounce at a time ("half at a time").

19. Also on July 29, 2019, HOWELL, JR. discussed "Uncle Dave" again with ELLIS-BARNES:

> RH:   I just talked to my man yesterday…he said he got soft for us…but Dave cooking it up
> WEB: Uncle Dave only charges fifty bucks for whipping (laughing)
> RH:   We need that whip. We been whipping the shit out of that

20.     Based on my experience with this investigation, I believe in the above call, HOWELL, JR. informed ELLIS-BARNES he recently spoke to their cocaine supplier ("talked to my man yesterday…got soft for us") and "Uncle Dave" was cooking ("whipping") it.

21.     In a call between "Uncle Dave" and ELLIS-BARNES on July 30, 2019, "Uncle Dave" called ELLIS-BARNES from the store attempting to buy mason jars and baking soda for cooking crack. In another call later that day, "Uncle Dave", using ELLIS-BARNES' phone, talked to HOWELL, JR. about how HOWELL, JR.'s cocaine supplier must have "stepped on" (cut) the cocaine too much because "the first one I cooked was right" but "I told him not to even cook the other one…it was mixed with something."

22.     In August 2019, your affiant obtained authorization to get a cell phone ping for "Uncle Dave." The location data for the phone indicated the user of the phone resided at the apartment building located at 302 Zara Street in the Knoxville area of Pittsburgh. Officers on surveillance were unable to locate "Uncle Dave."

23.     On September 29, 2019, "Uncle Dave" called with a new phone number. Your affiant obtained subscriber information for the phone via subpoena of the service provider. The subscriber is David LOVEINGS. In November 2019, your affiant and a FBI colleague spoof called the number and LOVEINGS self-identified. Several days later, LOVEINGS was arrested and is currently housed in Allegheny County Jail. LOVEINGS booking photo matched the DMV photo your affiant has for him, and the address of record is 302 Zara Street. LOVEINGS has subsequently been released.

24.     In September 2019, Sean JOHNSON, JR. began to be intercepted on both HOWELL, JR. phones your affiant obtained approval for during this investigation. JOHNSON,

6

JR. was identified in October 2019 via pole camera and officers on surveillance at HOWELL, JR.'s residence in Turtle Creek after JOHNSON, JR. stated he was on his way over. Officers on surveillance also obtained the license plate on JOHNSON, JR.'s vehicle, which was registered to JOHNSON, JR. at 119 10th Street, Apt. 2, Turtle Creek, Pennsylvania. The context of the calls and texts between JOHNSON, JR. and HOWELL, JR. indicate they are cousins.

25.    On October 1, 2019, JOHNSON, JR. (SJ) texted HOWELL, JR. (RH) his "business" phone"[1]:

> SJ: Cuz can u do me a favor tell dude recook that shit he gave u Bec they liked it when I did that I just grabbed a zip off my other p you see how fast I sold that one I'm bout boom this n I'ma bring u your bread so tmrw or thursday I just grabbed this so I can keep more money coming in why he fix that so when  I give u the 11 hunit I'ma buy a zip off you to I just did wanna wait cuz boy oh boy this jack jumping my brother lol
> RH: Lol hell yea cuzz0 lets get this fucking money

26.    Based on my experience with this investigation, JOHNSON, JR. texted HOWELL, JR. to inform him the way JOHNSON, JR. cooked their cocaine into crack was preferred JOHNSON, JR.'s customers over the way HOWELL, JR.'s cook did it ("tell dude recook that shit…they liked it when I did that"). JOHNSON, JR. also admitted to buying an ounce of cocaine off his other supplier ("grabbed a zip off my other p (plug)"). JOHNSON, JR. boasted he sold the other ounce quickly and was going to do the same with the one he just got off the other guy so he could bring HOWELL, JR. his cut of the profits ("see how fast I sold that…Ima boom this and bring you your bread"). JOHNSON, JR. also stated his customers were calling his phone a lot

---

[1] HOWELL, JR., like most other HDS members and associates encountered in this investigation, has multiple phones. At least one phone is the drug-related "business" phone, used mostly to communicate with customers, and personal phones, which are usually iPhones due to the fact they can communicate fairly securely with the Facetime application.

("this jack jumping my brother").  HOWELL, JR. then texted his approval ("lets get this fuckin money").

27.     On October 7, 2019, JOHNSON, JR. and HOWELL, JR. again texted to discuss drug-related business:

> SJ:  You tryn front me another one n I'll just have ur bread every three four days n then grab another one...so ur pack a be movn and I'll ba making something to
> RH: Yea cuz i got chu

28.     Based on my experience with this investigation, JOHNSON, JR. texted HOWELL, JR. to request a "fronted" (pay for it after sold) ounce of cocaine every three to four days when JOHNSON, JR. would have HOWELL, JR.'s "bread" (money) for the previous one.  JOHNSON, JR. stated it would allow HOWELL, JR. to keep reliable business moving ("pack be movin") and JOHNSON, JR. would be able to make some money by up-charging his customers ("making something too").

29.     On October 15, 2019, JOHNSON, JR. used a new number to call HOWELL, JR.'s personal phone, right after attempting unsuccessfully to call using the number investigators had already confirmed to be used by JOHNSON, JR.:

> SJ:  What's good cuzzo? You know you got me blocked on my other phone right?
> RH: Naw I ain't got you blocked
> SJ:  Yeah huh bro, it goes straight to the voicemail on my other phone. That's why I called you on this one
> RH: On what phone?
> SJ:  My Boomer
> RH: Yeah cause I didn't want that number on the line I don't like to talk to much on that

30.     Based on my experience with this investigation, I believe JOHNSON, JR. attempted to use his drug business phone ("Boomer") to call HOWELL, JR. on his personal phone, but HOWELL, JR. had it blocked because HOWELL, JR. didn't want a drug phone ("boomer")

contacting his personal phone ("didn't want that number on the line I don't like to talk too much on that").  In my experience, this is an example of how many drug traffickers attempt to thwart law enforcement interception of their communications, by using "boomer" or "burner" flip phones to conduct business and iPhones to communicate securely with associates.

31.     There are many more examples of calls and texts between JOHNSON, JR. and HOWELL, JR. confirming their drug-related relationship aside from their familial relationship. There are also texts that confirm JOHNSON, JR. also cooks cocaine into crack for distribution. Though JOHNSON, JR. was intercepted for a relatively short period of time because interception of HOWELL, JR.'s phones ended in October, pen register data for at least one of HOWELL, JR.'s phones, the "business phone," continues to show frequent contact with JOHNSON, JR. into November.

32.     The address associated with JOHNSON, JR. via the registration on his license plate, DMV database, and Postal Inspector mail checks, as well as subsequent surveillance of JOHNSON, JR., is 119 10th Street, Apt. 2, Turtle Creek, Pennsylvania (the "Residence").

33.     JOHNSON, JR. has a criminal record that includes two Felony Burglaries, two Felony Criminal Trespass, two Misdemeanor Drugs, and Felony Receiving Stolen Property.

34.     Based on my personal and professional experience, cellular telephones are likely to be located in the residence because people intend to keep their cellular telephone in close proximity to their persons.

35.     Based on my training and experience, cellular telephones typically contain call logs which reveal the telephone numbers contacted by the cellular telephone and contact lists of those individuals.  Obviously, those call logs and contact lists would corroborate the evidence set forth

above and assist in establishing that JOHNSON, JR was the individuals communicating with HOWELL, JR.

36.    Based on all of the above, I have probable cause to believe that JOHNSON, JR violated 21 U.S.C. § 846 and that currently located with the Residence are cellular telephones. Once the cellular telephones are seized and taken into evidence, I intend to seek other search warrants to seize the actual contents of the cellular telephones.

37.    On November 2, 2018, Monroeville Police Department detectives and officers on surveillance of HOWELL, JR.'s residence and suspected stash location, 236 Garden City Drive in Monroeville, observed Quenton MCCOY exit the residence and drive operate a rental vehicle away from the residence.  An officer on patrol conducted a traffic stop just down the street from the residence when MCCOY failed to use his turn signal to turn off Garden City Drive.  When the officer approached the vehicle, MCCOY failed to produce identification and started to reach toward his pockets.  MCCOY also refused the officer's instructions to exit the vehicle.  When the officer opened the door of the vehicle to instruct MCCOY to exit again, MCCOY did so but continue to reach toward his pockets.  The officer, fearing MCCOY was reaching for a firearm, forcibly detained MCCOY and did a pat down of the area to where MCCOY was reaching.  The officer immediately felt what appeared to be several bricks of suspected heroin.  MCCOY then voluntarily confessed he had "five bricks down my pants."

38.    The five bricks, or grams, of suspected heroin were held together by rubberbands and stamped with the "Burger King" logo in blue ink.  This is the same type of stamp bag at least one HDS member, Curtis SAXTON-SMITH, was distributing around the same time, as officers conducted multiple a controlled purchase from SAXTON-SMITH shortly after this incident.  The

10

suspected heroin was sent to the Allegheny County Crime Lab for further analysis. On February 15, 2019, the lab confirmed the substance MCCOY possessed was approximately five grams of a mixture and substance containing both heroin and fentanyl.

39.     Based on my training and experience, five grams of a heroin and fentanyl mixture, packaged in the manner in which these narcotics were packaged, is consistent with an intent to distribute, as opposed to an intent to use the substance personally.

## CONCLUSION

40.     Your Affiant submits that, based upon the above-described facts, there is probable cause to believe that Sean JOHNSON, JR. and David LOVEINGS committed the crime of conspiring to distribute quantity of a mixture and substance containing a detectible amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, § 846.

41.     Your Affiant further submits there is probable cause to believe that currently located in the Residence are cellular telephones that contain evidence of a violation of 21 U.S.C. § 846.

42.     Your Affiant further submits that, based upon the above-described facts, there is probable cause to believe Quenton MCCOY committed the crime of possessing with intent to distribute a mixture and substance containing heroin, a Schedule I controlled substance, and fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, § 841, on November 2, 2018.

43.     Your Affiant therefore requests that the Court issue arrest warrant for Sean JOHNSON, JR., David LOVEINGS, and Quenton MCCOY, and search warrants for the

Residence and the persons of Sean JOHNSON, JR. and David LOVEINGS to search for and seize

cellular telephones.

The foregoing is true and correct to the best of my knowledge, information, and belief.

Eric Goucher
Special Agent
Federal Bureau of Investigation

Sworn and subscribed to before me
this 18th day of November, 2019.

HONORABLE LISA PUPO LENIHAN
United States Magistrate Judge
Western District of Pennsylvania

12